

**FILED & ENTERED**

**MAY 09 2019**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY gonzalez DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# LOS ANGELES DIVISION

| | |
|---|---|
| In re:    Chong Sang Tak, Debtor | Case No.:    2:18-bk-13712-ER<br>Adv. No.:    2:18-ap-01217-ER |
| Celia Bryann Trujillo,<br><br>                                  Plaintiff<br><br>         v.<br><br>Chong Sang Tak,<br><br>                                  Defendant | **MEMORANDUM OF DECISION FINDING THAT DEFENDANT'S LIABILITY TO PLAINTIFF, IN THE AMOUNT OF $16,020, IS EXCEPTED FROM DEFENDANT'S DISCHARGE**<br><br>[No hearing required pursuant to Federal Rule of Civil Procedure 78(b) and Local Bankruptcy Rule 9013-1(j)(3)] |

   The Court has previously found that Defendant is liable to Plaintiff under § 523(a)(6) for constructively discharging Plaintiff from her employment at Gangnam Pizza, Inc., d/b/a Round Table Pizza ("Gangnam Pizza"). *See* Final Ruling Finding that Defendant is Liable Pursuant to § 523(a)(6) [Doc. No. 30] (the "Liability Ruling"). The Court ordered Plaintiff to submit additional evidence establishing the damages she suffered as a result of the constructive discharge. Having reviewed Plaintiff's additional evidence,[1] the Court finds that Defendant is liable to Plaintiff in the amount of $16,020.

---

[1] *See* Declaration of Celia Bryann Trujillo in Support of Motion for Judgment by Default and Judgment Filed Per Court Ruling on March 20, 2019 By the Honorable Ernest M. Robles [Doc. No. 31].

## I. Facts
### Procedural Background

Celia Bryann Trujillo (the "Plaintiff") filed the instant *Complaint Objecting and Seeking Exception to Discharge of Debtor* [Doc. No. 1] (the "Complaint") on June 28, 2018. The Complaint alleges that Chong Sang Tak (the "Defendant") employed Plaintiff at his pizza restaurant; that Defendant failed to protect Plaintiff from another employee who sexually assaulted Plaintiff; and that Defendant's liability is excepted from discharge pursuant to § 523(a)(6).

The Complaint initially named Chong Sang Tak, In Og Tak, and Gangnam Pizza, Inc., dba Round Table Pizza ("Gangnam Pizza") as defendants. On July 30, 2018, Plaintiff filed a document captioned *Amended Adversary Petition* wherein Plaintiff requested that the Court dismiss Defendants In Og Tak, Gangnam Pizza, and Does 1 through 50 (the "Non-Answering Defendants"), on the ground that such defendants were named in error. The Court found that it was not appropriate to construe the *Amended Adversary Petition* as a First Amended Complaint, since the document requested only that the Non-Answering Defendants be dismissed and did not re-allege any of the operative claims for relief. *See* Order Confirming Effectiveness of Plaintiff's Voluntary Dismissal of Non-Answering Defendants [Doc. No. 12] (the "Dismissal Order") at ¶ 3. Instead, the Court construed the *Amended Adversary Petition* as a request for dismissal of the Non-Answering Defendants, made pursuant to Civil Rule 41(a)(1)(A). Dismissal Order at ¶ 2. The Court confirmed the effectiveness of the dismissal of the Non-Answering Defendants. Dismissal Order at ¶ 3.

On February 4, 2019, the Court struck Defendant's Answer and entered Defendant's default. *See* Memorandum of Decision Imposing Case-Dispositive Sanctions Against Defendant [Doc. No. 23] and Order Imposing Case-Dispositive Sanctions Against Defendant [Doc. No. 24].

### Liability Ruling

On March 20, 2019, upon Plaintiff's motion for default judgment, the Court determined that Defendant was liable to Plaintiff under § 523(a)(6). *See generally* Liability Ruling. The Court found that the following facts had been established by the Complaint:

> Commencing in June 2016, Plaintiff was employed by Defendant as a part-time server at his restaurant, Gangnam Pizza. After the restaurant had closed for the evening on January 6, 2017, Plaintiff's supervisor, Suk Ju Park, asked Plaintiff to come to the cash register. When Plaintiff arrived at the cash register, Suk grabbed Plaintiff around the waist and began fondling Plaintiff's breasts. Plaintiff ran into the restroom to escape the unwanted touching. Park chased Plaintiff into the restroom, where he continued to fondle Plaintiff's breasts. Plaintiff succeeded in escaping from the restaurant after being subjected to Suk's unwanted touching for approximately eight to ten minutes.
> 
> On January 7, 2017, Plaintiff advised Defendant, in writing, of the assault that had occurred the previous evening. On January 8, 2017, Defendant viewed closed circuit television footage of the assault. Defendant took no action against Park. Plaintiff never returned to work at Gangnam Pizza.
> 
> Defendant was aware that other female employees at Gangnam Pizza were subjected to unwanted sexualized touching by Park. Notwithstanding such awareness, Defendant took no action to protect Plaintiff or other female employees from Park.

> Shortly after Park assaulted Plaintiff, Defendant bought Park an airline ticket to enable him to return to South Korea. Defendant purchase the airline ticket to help Park avoid liability for the assault.

Liability Ruling at 2–3.

The Court found that Plaintiff had failed to establish that Defendant was liable on account of Park's sexual assault:

> "Section 523(a)(6) excepts from discharge debts arising from a debtor's 'willful and malicious' injury to another person or to the property of another. The 'willful' and "malicious' requirements are conjunctive and subject to separate analysis." *Plyam v. Precision Development, LLC (In re Plyam)*, 530 B.R. 456, 463 (9th Cir. B.A.P. 2015) (internal citations omitted).
> An injury is "willful" when "a debtor harbors 'either subjective intent to harm, or a subjective belief that harm is substantially certain.' The injury must be deliberate or intentional, 'not merely a deliberate or intentional act that leads to injury.'" *Id.* at 463 (internal citations omitted). When determining intent, there is a presumption that the debtor knows the natural consequences of his actions. *Ormsby v. First Am. Title Co. of Nevada (In re Ormsby)*, 591 F.3d 1199, 1206 (9th Cir. 2010). An injury is "malicious" if it "involves '(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse.'" *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1146–47 (9th Cir. 2002) (internal citations omitted). "Within the plain meaning of this definition, it is the wrongful act that must be committed intentionally rather than the injury itself." *Jett v. Sicroff (In re Sicroff)*, 401 F.3d 1101, 1106 (9th Cir. 2005).
> In addition, the injury-producing conduct must be tortious in order to be excepted from discharge under §523(a)(6). *Lockerby v. Sierra*, 535 F.3d 1038, 1040 (9th Cir. 2008). "[C]onduct is not tortious under § 523(a)(6) simply because injury is intended or 'substantially likely to occur,' but rather is only tortious if it constitutes a tort under state law." *Id.* at 1041.
> Plaintiff asserts that she is entitled to damages in the amount of $250,000 as a result of Defendant's conduct. According to Plaintiff's declaration:
>
>> I had to undergo psycho analysis [sic] and therapy for the harassment and assault I underwent as an employee of [Defendant].… I could not work nor finish school and estimate my damages to be in the amount of $250,000.00 for inability to work and severe emotional distress.
>
> Plaintiff's Decl. at ¶ 5 [Doc. No. 28].
> To substantiate the damages asserted, Plaintiff attaches an unauthenticated report from Clinica Sierra Vista. Plaintiff also seeks damages of $300 on account of two weeks' unpaid wages.
> Plaintiff does not articulate the legal rationale for her contention that Defendant is liable on account of Park's sexual assault. Even though it was Park, not Defendant, who committed the sexual assault, it is possible to postulate facts under which Defendant would be liable under § 523(a)(6). However, such facts are not present here. For Defendant to be liable under § 523(a)(6), it would be necessary for Plaintiff to show that

> Defendant knew that Park had a history of sexually assaulting female employees under his supervision, and that Defendant placed Park in a supervisory capacity because he wanted Plaintiff to be victimized by Park.

Liability Ruling at 3–5.

The Court found that although Plaintiff had failed to establish that Defendant was liable for Park's sexual assault, Plaintiff had established that Defendant constructively discharged Plaintiff. The Court further found that the constructive discharge was willful and malicious within the meaning of § 523(a)(6):

> In California, an employee "discharged in violation of fundamental public policy may bring an action against their employer sounding in tort." *Gantt v. Sentry Insurance*, 1 Cal.4th 1083, 1098, 4 Cal.Rptr.2d 874, 824 P.2d 680 (Cal. 1992), *overruled in part on other grounds*, *Green v. Ralee Engineering Co.* 19 Cal.4th 66, 78 Cal.Rptr.2d 16, 960 P.2d 1046 (Cal. 1998). "[T]o establish a constructive discharge, an employee must plead and prove ... that the employer either intentionally created or knowingly permitted working conditions that were so intolerable or aggravated at the time of the employee's resignation that a reasonable employer would realize that a reasonable person in the employee's position would be compelled to resign." *Vasquez v. Franklin Mgmt. Real Estate Fund, Inc.*, 222 Cal. App. 4th 819, 826, 166 Cal. Rptr. 3d 242, 247 (Cal. Ct. App. 2013).
>
> The Complaint establishes that Defendant viewed video of the sexual assault shortly after it occurred, and took no action against Park, the assailant. Defendant's inaction constituted a constructive discharge of Plaintiff, as that inaction created an intolerable working environment. Constructive discharge sounds in tort and therefore can give rise to liability under § 523(a)(6).
>
> Defendant's constructive discharge of Plaintiff was willful and malicious within the meaning of § 523(a)(6). After watching video footage of the assault, Defendant took no action against Park and made no attempt to provide Plaintiff with a safe working environment. Defendant's failure to discharge his responsibilities as an employer in these circumstances establishes that Defendant had either a subjective intent to harm Plaintiff, or a subjective belief that harm to Plaintiff was substantially certain. Consequently, the injury inflicted by Defendant was willful.
>
> The injury was also malicious. Defendant's failure to take remedial action after learning of the assault was a wrongful act done intentionally. That Defendant acted intentionally is shown by his subsequent actions to shield Park from liability by abetting his escape to South Korea. Defendant's actions necessarily caused injury and were done without just cause or excuse.

Liability Ruling at 5–6.

**Plaintiff's Evidence Regarding Damages**

The evidence of damages initially submitted by Plaintiff focused upon the injuries resulting from the sexual assault, as opposed to the injuries resulting from the constructive discharged. *See* Liability Ruling at 6. The Court directed Plaintiff to submit evidence showing the damages attributable to the constructive discharge.

Plaintiff has submitted a brief declaration in support of the damages alleged. Plaintiff has not submitted any admissible testimony from mental health professionals.[2] Plaintiff's declaration provides in relevant part:

> I informed [Defendant] about the attack and told him to do something about it. [Defendant] also saw CCTV footage of the assault. There was no response from [Defendant]. I was therefore forced to discontinue my employment with [Gangnam Pizza]. I had to undergo psychoanalysis and therapy for the harassment and assault that led to my constructive discharge.
> I could no longer continue work nor school due to the treatment I was subjected [to] that caused severe emotional distress and inability to continue working [at Gangnam Pizza]. I estimate my emotional distress damages to be in the amount of $250,000.

Plaintiff's Decl. [Doc. No. 31] at ¶¶ 5–6.

## II. Findings Regarding Plaintiff's Damages

For tortious conduct such as constructive discharge, "the measure of damages … is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." Cal. Civ. Code § 3333. An employer may be held liable for emotional distress, mental anguish, and other psychic injuries that an employee suffers in connection with employer wrongdoing. "Such harm, though less susceptible of precise measurement than more tangible pecuniary losses or physical injuries would be, is no less real or worthy of compensation." *Agarwal v. Johnson*, 25 Cal. 3d 932, 953, 603 P.2d 58, 71 (Cal. 1979), *disapproved of on other grounds by White v. Ultramar, Inc.*, 21 Cal. 4th 563, 981 P.2d 944 (Cal. 1999).

Plaintiff's brief declaration is not sufficient to support damages in the amount of $250,000. California courts have awarded employees damages in the six figure range on account of emotional distress resulting from employer wrongdoing. Such awards, however, were supported by extensive testimony from mental health professionals, in addition to evidence of physical symptoms attributable to the plaintiff's emotional distress. For example, in *Bihun v. AT&T Info. Sys., Inc.*, an award of $662,000 for emotional distress caused by the plaintiff's employer was supported by testimony from a psychologist, as well as evidence that the plaintiff suffered from "headaches, dizziness, vomiting, diarrhea, weight loss, sleep disturbances, teeth grinding, a facial twitch, crying spells and depression." *Bihun*, 13 Cal. App. 4th 976, 986, 16 Cal. Rptr. 2d 787, 791 (Cal. 1993), *as modified on denial of reh'g* (Mar. 25, 1993), and *disapproved of on other grounds by Lakin v. Watkins Associated Indus.*, 6 Cal. 4th 644, 863 P.2d 179 (Cal. 1993). In *Watson v. Dep't of Rehab.*, a damages award of $1.5 million was supported by a psychiatrist's testimony that the plaintiff suffered from "a major depressive disorder with psychotic features," as well as evidence that the plaintiff suffered from "headaches, chest pains, loss of appetite, memory loss, loss of sexual drive … nightmares … [and] heard voices." *Watson*, 212 Cal. App. 3d 1271, 1283, 261 Cal. Rptr. 204, 210 (Ct. App. 1989).[3]

---

[2] In connection with her Motion for Default Judgment [Doc. No. 28], Plaintiff submitted a report from Clinica Sierra Vista. The Court found that the report was not admissible because it had not been authenticated by the psychotherapist who treated Plaintiff. *See* Liability Ruling at 6.

[3] The damages awarded in *Watson* were attributable to lost earnings and to emotional distress. The *Watson* court did not specify how much of the $1.5 million award was attributable to emotional distress as opposed to lost earnings.

In contrast to the detailed evidence presented in *Bihun* and *Watson*, Plaintiff's evidence of emotional distress consists only of a cursory declaration stating that Plaintiff received psychoanalysis and therapy and could no longer work or attend school. Plaintiff does not specify the length of the therapy or the length of time during which she could not work or attend school. Plaintiff testifies that she experienced "severe emotional distress" but provides no elaboration. Plaintiff does not, for example, testify as to whether the emotional distress impaired her ability to function in social settings; caused sleeplessness or irritability; reduced her ability to concentrate on important tasks; or caused her to lose interest in hobbies she had formerly enjoyed pursuing.

In addition, Plaintiff's evidence still does not sufficiently distinguish between the emotional distress caused by the constructive discharge, as opposed to the emotional distress caused by the sexual assault. The Court understands that the sexual assault and constructive discharge are related, and that it is therefore not possible to allocate with mathematical precision the extent to which Plaintiff's emotional injuries resulted from the sexual assault versus the constructive discharge. Nonetheless, Plaintiff has the burden of proof as to damages and the Court has found that Defendant is not liable for those damages resulting from Park's sexual assault. Inadequacies in Plaintiff's evidence must be resolved against her.

While Plaintiff's evidence is not sufficient to support damages of $250,000, Plaintiff's testimony, combined with the facts now established as a result of Defendant's default, establish that Plaintiff did suffer severe emotional distress. Defendant refused to take any action against Park after having been shown video evidence that Park had sexually assaulted Plaintiff. Defendant's inaction resulted in Plaintiff's constructive discharge from her employment at Gangman Pizza. Plaintiff testifies that after being subjected to this treatment, she could not work or attend school.

However, even after having been provided an opportunity to supplement the record, Plaintiff has not proffered detailed evidence regarding the nature and extent of the emotional distress that she undoubtedly experienced. The absence of such detailed evidence requires the Court to limit Plaintiff's emotional distress damages to $10,000.

Plaintiff also testifies that as a result of her constructive discharge, she did not receive a final paycheck in the amount of $300. Non-receipt of this final paycheck was among the harms caused by Plaintiff's constructive discharge. Plaintiff is entitled to additional damages in the amount of $300.

Plaintiff's counsel seeks attorneys' fees in the amount of $7,000, based upon 17.5 hours of work billed at $400 per hour.

"Established case law holds that a debtor's obligation for attorneys' fees and costs is excepted from discharge under section 523(a)(6) as a 'debt for' debtor's willful and malicious injury when awarded by the state court 'with respect to' or 'by reason of' the same underlying conduct that precluded discharge of the underlying compensatory damages award." *Suarez v. Barrett (In re Suarez)*, 400 B.R. 732, 738–39 (B.A.P. 9th Cir. 2009), *aff'd*, 529 F. App'x 832 (9th Cir. 2013).

As set forth above, the Court has awarded Plaintiff $10,300 based upon Defendant's constructive discharge of Plaintiff. Although these damages were not fixed by the state court, *Suarez*'s reasoning applies because the damages arise under California law.

In seeking attorneys' fees, Plaintiff's counsel does not distinguish between fees incurred establishing Defendant's liability for constructively discharging Plaintiff, versus fees incurred establishing the non-dischargeability of the indebtedness arising on account of such liability. Based upon its review of the pleadings filed by Plaintiff's counsel in this action, the Court finds

that of the 17.5 hours billed, 12.5 hours are attributable to establishing Defendant's liability for the constructive discharge. Therefore, Plaintiff is entitled to an award of attorneys' fees in the amount of $5,000 (12.5 hours times $400/hour). Plaintiff is also entitled to an award of costs in the amount of $720 (consisting of $410 in filing fees and $310 in deposition costs).

    Based upon the foregoing, Plaintiff is entitled to an award of damages in the amount of $16,020 (consisting of emotional distress damages in the amount of $10,000, damages for non-receipt of Plaintiff's final paycheck in the amount of $300, attorneys' fees in the amount of $5,000, and costs in the amount of $300). The Court will enter judgment consistent with this Memorandum of Decision.

###

Date: May 9, 2019

Ernest M. Robles
United States Bankruptcy Judge